Not for Publication

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WINEBOW, INC., | |
| *Plaintiff,* | Civil Action No. 17-4833 |
| v. | **OPINION** |
| RHODE ISLAND DISTRIBUTING CO., LLC, | |
| *Defendant.* | |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Defendant Rhode Island Distributing Co., LLC's ("Defendant" or "RIDC") motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the alternative, to transfer this action pursuant to 28 U.S.C. § 1404(a). D.E. 6. Plaintiff Winebow, Inc. ("Plaintiff" or "Winebow") filed a brief in opposition, D.E. 10, to which Defendant replied, D.E. 12.[1] The Court reviewed the submissions in support and in opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is **DENIED**.

---

[1] In this Opinion, Defendant's motion to dismiss (D.E. 6) will be referred to as "Def. Brf." Plaintiff's brief in opposition (D.E. 10) will be referred to as "Pl. Opp." Defendant's reply brief (D.E. 12) will be referred to as "Def. Rep."

## I. BACKGROUND

### A. Factual Background

<u>The Parties & the Lawsuit</u>

Plaintiff Winebow is a Delaware corporation whose principal place of business is in New Jersey. Complaint ("Compl.") ¶ 1. Plaintiff imports and distributes wine. *Id.* Defendant RIDC is a limited liability company whose principal place of business is in Rhode Island. *Id.* ¶ 2. Defendant is a wholesale distributor that purchases and resells a variety of alcoholic and non-alcoholic beverages in Rhode Island on behalf of its importers, including Plaintiff. *Id.*

In 2003, Winebow's business office was located in Montvale, New Jersey, and its warehouse was located in Pine Brook, New Jersey. Pl. Opp., Affidavit of Keith Renna ("Renna Aff.") ¶ 2; D.E. 10-1. In 2016, Winebow consolidated its business office with its warehouse in Pine Brook, New Jersey. *Id.* RIDC is not registered or licensed to conduct business in New Jersey. Def. Brf., Affidavit of Kenneth Mancini ("Mancini Aff.") ¶ 4; D.E. 6-2. It has no offices, employees, bank accounts, assets, or customers in New Jersey. *Id.* ¶ 5.

From May 2008 to 2017, Defendant acted as a wholesale distributor of Winebow's wine and spirit portfolio in Rhode Island. Compl. ¶ 7. Plaintiff claims that this business relationship arose from an oral distributorship agreement. *Id.* ¶ 8. There was no written agreement between the parties. *Id.* In 2017, Winebow terminated its agreement with RIDC and retained a new entity to import and distribute its wines and spirits in Rhode Island. *Id.* ¶ 11. RIDC claimed that the Rhode Island Dealership Preservation and Preservation Act (the "Dealership Act"), R.I. Gen. Laws § 6-54-1 *et seq.*, prohibited Winebow from terminating their agreement and appointing a new distributor. *Id.* ¶¶ 10, 13–14.

History of Business Relationship

In 2008, RIDC sought to acquire the assets of Slocum & Sons ("Slocum"), a Rhode Island business that specialized in selling wines to Rhode Island retailers and restaurants. *Id.* ¶ 7. From RIDC's perspective, Slocum's exclusive distribution of Winebow's portfolio "was the single most valuable asset of the Slocum & Sons transaction." *Id.* ¶ 8. Thus, before finalizing the acquisition, RIDC sought assurance that Winebow would transfer their exclusive distribution rights from Slocum to RIDC. Def. Rep., Supplemental Affidavit of Kenneth Mancini ("Supp. Mancini Aff.") ¶ 4; D.E. 12-2.

RIDC and Winebow then entered in negotiations over their distributorship relationship. On April 24, 2008, RIDC met with Slocum's principal and Winebow's principal outside of New Jersey, apparently in New York City. *Id.* ¶¶ 5-8. On May 20, 2008, the RIDC and Slocum acquisition closed. *Id.* ¶ 12. RIDC and Winebow then finalized their distributorship relationship. In June 2008, RIDC's inventory purchasing administrator sent a letter to Winebow which included trade references and banking contacts. *Id.* ¶ 14; *see* Renna Aff. ¶ 4 & Ex. 1; D.E. 10-2. Winebow required the information to determine whether it would appoint RIDC to be an authorized wholesaler. Renna Aff. ¶ 4. Shortly thereafter, RIDC also sent Winebow a credit application. *Id.* ¶ 5 & Ex. 2. Again, Winebow required the credit application in evaluating RIDC as an authorized distributor. *Id.* ¶ 5. Winebow and RIDC's agreement was verbal and contained no limitations on termination.

Defendant believes that the majority of business meetings between the parties, over the course of their dealings, took place in Rhode Island. RIDC management employees attended Winebow wine tastings in New York City. Mancini Aff. ¶ 11. Further, meetings between RIDC employees and Winebow representatives took place in Rhode Island. *Id.* ¶ 12. RIDC indicates

that it "mostly" communicated with individuals located outside New Jersey regarding sales and marketing. *Id.* ¶ 13. Finally, RIDC sent payment to Winebow via check to a post office box in Massachusetts. *Id.* ¶ 14.

Plaintiff does not dispute Defendant's information regarding their dealings but, instead, offers further details. As noted, on June 4, 2008, RIDC sent a letter to Winebow in New Jersey, listing its trade references and banking accounts. Renna Aff. ¶ 4 & Ex. 1; D.E. 10-2. Six days later, on June 10, 2008, RIDC sent the required credit application to Winebow's office in Montvale, New Jersey. *Id.* ¶ 5 & Ex. 2; D.E. 10-2; Supp. Mancini Aff. ¶ 17; D.E. 12-2.[2]

In the normal course of business operations, RIDC emailed purchase orders to Winebow. Renna Aff. ¶ 7. Typically, Winebow's customer service team in New Jersey received these emails. Over the course of their business relationship, RIDC sent approximately 477 purchase orders to Winebow, reflecting a total purchase amount of $4,900,000. *Id.* ¶ 6 & *see* Ex. 3; D.E. 10-3. Pursuant to those purchase orders, approximately $2,200,000 worth of Winebow's goods was transferred to Defendant from Winebow's Pine Brook, New Jersey warehouse. *Id.* ¶ 8 & *see* Ex. 3; D.E. 10-3.

Upon receiving the purchase orders, Winebow's customer service team in New Jersey sent RIDC sales order confirmations. *Id.* ¶ 9. The order confirmations instructed RIDC to schedule pick-up of the Winebow goods from the warehouse in Pine Brook, New Jersey. *Id.* ¶ 9 & *see* Ex. 4; D.E. 10-4. Winebow issued RIDC invoices from its Pine Brook office. *Id.* ¶ 11 & *see* Ex. 5; D.E. 10-5. RIDC issued bill-back invoices to Winebow in New Jersey. *Id.* ¶ 12 & *see* Ex. 6; D.E.

---

[2] For the most part, the parties only appear to disagree on one factual issue. As noted, RIDC indicates that it first met with the head of Winebow outside of New Jersey, most likely in New York. In comparison, Winebow believes that it had no relationship with RIDC prior to receiving RIDC's letter and credit application in June 2008. Renna Aff. ¶ 6. This factual dispute does not impact the Court's analysis.

10-6. Over the course of these dealings, Winebow claims that RIDC's personnel contacts with Winebow in New Jersey included Keith Renna, Josephine Pais, Glen DePew, Rose Savage, Gina Lacroce, the Winebow National Service Group, and the Winebow bill-back group. *Id.* ¶ 13.

Plaintiff also provides additional details regarding the shipping of Winebow's goods to RIDC. Winebow's national shipping supervisor and team prepared outbound orders for RIDC from the Pine Brook, New Jersey warehouse. Pl. Opp., Affidavit of Mariano Rivera ("Rivera Aff.") ¶ 2; D.E. 10-7. This included loading the goods onto RIDC trucks or carriers that arrived at the New Jersey warehouse. *Id.* Between 2008 through 2015, Winebow representatives in New Jersey sent emails to RIDC confirming the sales orders and informing RIDC how to schedule a pick-up from the Pine Brook warehouse. *Id.* ¶ 4. RIDC then arranged for the scheduled pick-ups from the warehouse. *Id.* ¶ 5. The bills of lading for these purchases identify Winebow as the shipper, and include the address of the Pine Brook warehouse. RIDC is identified as the consignee. *Id.* ¶ 7 & *see* Ex. 1; D.E. 11.[3] Further, from 2008 to the end of their business relationship, RIDC scheduled and sent carriers to the Pine Brook warehouse 212 times, accounting for invoices of approximately $2,200,000. *Id.* ¶ 8.

On February 8, 2017, Winebow's affiliate Winebow Rhode Island, Inc. ("WRI") filed an application for a Class B Alcoholic Beverage License with the Rhode Island Department of Business Regulation. Pl. Opp., Affidavit of Kimberly Hillman ("Hillman Aff.") ¶¶ 2-3; D.E. 10-10. The Alcoholic Beverage Wholesale Dealers of Rhode Island, a trade association that RIDC is a member of, "vigorously opposed" WRI's license application. *Id.* ¶ 4. Four months later, following an evidentiary hearing, the Department granted WRI the license. *Id.* ¶ 5.

---

[3] The exhibit can be found in the amended document at D.E. 11.

Sometime between June 12th to June 14th, 2017, Winebow sent RIDC a letter, explaining Winebow's intent to terminate their distribution relationship effective July 14, 2017. Mancini Aff. ¶ 16. In response, on June 14, 2017, RIDC's counsel informed Winebow that their intended termination violated the Dealership Act. *Id.* ¶ 17; Hillman Aff. ¶ 6. On June 22, 2017, RIDC's counsel again told Winebow that it had violated the Dealership Act. Hillman Aff. ¶ 6.

### B. Procedural History

On June 29, 2017, Winebow filed its Complaint against RIDC. D.E. 1. Winebow seeks a declaratory judgment that it may terminate its distribution relationship with RIDC; that it has no continuing obligations to RIDC; and that Winebow's new distributor, WRI, may continue distributing Winebow's portfolio in Rhode Island. Compl. ¶ 16. On July 21, 2017, RIDC sued Winebow in Rhode Island Superior Court alleging violations of the Dealership Act. Def. Brf. at 6; D.E. 6. Winebow subsequently removed this matter to United States District for the District of Rhode Island on August 11, 2017. Def. Rep. at 4 fn. 1; D.E. 12.

On August 1, 2017, RDIC filed the pending motion in this Court. D.E. 6. Plaintiff then filed a brief in opposition, D.E. 10, to which Defendant replied, D.E. 12. As noted, Defendant seeks a dismissal for want of personal jurisdiction, a dismissal for lack of venue, or, alternately, a transfer.

## II.   LEGAL ANALYSIS

Personal jurisdiction and venue, although closely related issues which determine where a suit will be adjudicated, raise separate considerations. "The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum. . . ." *Eason v. Linden Avionics*, 706 F. Supp. 311 (D.N.J. 1989) (citing *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979)).

## A. **Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) permits a motion to dismiss for lack of personal jurisdiction. In such a motion, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Initially, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.*; *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Yet, in reviewing the evidence, a court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992); *see also Metcalfe v. Renaissance Marine, Inc.* 566 F.3d 324, 330 (3d Cir. 2009) ("[I]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed factors in favor of the plaintiff") (internal quotation marks omitted); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) ("[A] court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff [when deciding a motion regarding personal jurisdiction.]"). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state" so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotation marks omitted). The inquiry thus involves a two-

step process, first looking to the state requirements and then to the constitutional requirements. *IMO Indus., Inc. v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998). New Jersey's long-arm jurisdiction law provides that courts may "exercise jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010) (internal quotation marks omitted), *rev'd on other grounds sub nom., J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). Accordingly, the two steps are collapsed into one and "we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

The "constitutional touchstone remains whether the defendant purposefully established 'minimum' contacts in the forum State." *Id.* at 474 (citing *Int'l Shoe Co.*, 326 U.S. at 316). A defendant must have "fair warning" that its conduct will subject it to the jurisdiction of a foreign court. *Id.* at 472. A defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Once a plaintiff demonstrates a *prima facie* case of personal jurisdiction by establishing minimum contacts, the burden shifts to the defendant. In fact, once minimum contacts have been shown, jurisdiction is "presumptively constitutional." *O'Connor*, 496 F.3d at 324. A defendant

"must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477.

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If a company is subject to a forum's general jurisdiction, it can be sued there on any matter. *Id.* If, however, an entity is solely subject to specific jurisdiction, it may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id.*

### 1. General Personal Jurisdiction

General jurisdiction, also called all-purpose jurisdiction, may be asserted over an out-of-state corporation "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* For an entity, its "place of incorporation and principal place of business are paradigm bases for general jurisdiction[.]" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal quotation marks omitted). Once general jurisdiction is established, a court may hear *any and all claims* against the corporation. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.

Here, RDIC argues that the Court does not have general jurisdiction. Def. Brf. at 8-9. Defendant asserts that New Jersey is neither its place of incorporation nor its principal place of business. *Id.* at 8. Further, while it is possible for general jurisdiction to nevertheless exist in narrow circumstances, Plaintiff has not alleged facts showing continuous and systemic contacts between RIDC and New Jersey. *Id.* at 9. Plaintiff does not claim that the Court has general jurisdiction over RIDC. Pl. Opp. at 8 fn. 1. However, Plaintiff indicates that it would like targeted discovery on this issue. *Id.* In support of this discovery request, Plaintiff points to a RIDC website, where RIDC describes itself as a business servicing New England and Upstate New York. *Id.*

In light of *Daimler*, the Court does not have general jurisdiction over RIDC. RIDC is not incorporated in New Jersey. Its principal place of business is not in New Jersey. Moreover, Plaintiff has failed to make a sufficient showing that jurisdictional discovery is appropriate. Plaintiff merely references RIDC's website, which states that RIDC does business in New York, not New Jersey. Plaintiff does not present facts contradicting Defendant's claims that it has no employees or presence in New Jersey. The Court finds that it does not have general personal jurisdiction.

### 2. Specific Personal Jurisdiction

Specific jurisdiction requires that the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (internal citations and quotation marks omitted). The minimum contacts analysis depends upon "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). However, actual "[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus., Inc.*, 155 F.3d at 259.

The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, the defendant must have "purposefully directed [its] activities at the forum." *Id.* (internal quotation marks omitted).[4]

---

[4] This factor has also been characterized as "purposeful availment." *Burger King*, 471 U.S. at 475. The factor focuses on contact that the defendant itself created with the forum State. *Id.* The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person." *Id.* (internal quotation marks omitted) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp.*, 44 U.S. at 299; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

Second, the litigation must "arise out of or relate to at least one of those activities." *Id.* (internal quotation marks omitted). Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id.* (internal quotation marks omitted).

A variation of the *O'Connor* test may apply depending on the nature of the action, for example if a breach of contract or intentional tort is alleged. Here, although Plaintiff is seeking declaratory relief, the matter is most akin to a contractual action. Plaintiff claims that it has the right to terminate its business relationship with Defendant. Defendant, however, believes that such termination violates the Dealership Act. In other words, Defendant claims that by operation of a state statute, Plaintiff is in breach of the unwritten, verbal distributorship agreement between the parties.

For a contract claim, a court analyzes the totality of circumstances surrounding the contract to determine whether it may properly exercise jurisdiction over the defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 99 (3d Cir. 2004). This test is not "the equivalent of a requirement that the defendants' contacts with the forum be the proximate cause of the plaintiff's claims." *Id.* Rather, a court must consider whether the defendant's contacts with the forum were instrumental in either the formation or the breach of the contract. *Telcordia Tech Inc. v. Telkom SA Ltd.,* 458 F.3d 172, 177 (3d Cir. 2006); *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted); *see also Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) ("In determining whether specific jurisdiction exists, however, we consider not only the contract but also 'prior negotiations and contemplated future consequences, along with the terms of the contract and *the parties' actual course of dealing*.'" (emphasis added)) (quoting *Burger King,* 471 U.S. at 479)). Physical entrance into the jurisdiction is not required,

during negotiations or any other time, to find jurisdiction over a non-resident. *Corigliano v. Classic Motor, Inc.*, 611 F. App'x 77, 80 (3d Cir. 2015); *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993). Rather, telephone, wire, and other electronic "communications can constitute contacts with the forum state." *Telcordia Tech Inc.*, 458 F.3d at 177 (citing *Burger King Corp.*, 471 U.S. at 476)); *Gen. Elec. Co.*, 270 F.3d at 151.

### a. Minimum Contacts/Purposeful Availment

Defendant largely relies on *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 148 (3d Cir. 1996), to support its assertion that specific jurisdiction does not exist. Def. Brf. at 10-12. To that end, Defendant asserts that RIDC's contacts with New Jersey were "random" and "fortuitous." *Id.* at 12. Plaintiff, however, argues that the facts in *Vetrotex* differ significantly from the facts present here. Pl. Opp. at 10. Plaintiff points to several cases where specific jurisdiction was found to support its argument, including *Bachmann Software & Servs. v. Intouch Grp., Inc.,* No. CIV.A.08-2025, 2008 WL 2875680, at *1 (D.N.J. July 22, 2008).

In *Vetrotex* plaintiff Vetrotex CertainTeed Corporation[5], a Pennsylvania corporation, brought suit against defendant Consolidated Fiber Glass Products Company, a California corporation. 75 F.3d at 147. On appeal, the Third Circuit addressed whether the district court had properly dismissed the plaintiff's complaint for lack of personal jurisdiction. *Id.* The plaintiff originally solicited the defendant to buy a fiberglass product. Between 1980 through 1989, the parties had an ongoing business relationship. *Id.* at 149. The defendant had no offices, employees, or representatives in Pennsylvania. *Id.* at 148. The defendant also never sold any of its products in, or through, Pennsylvania. *Id.*

---

[5] For convenience, the Court only refers to "Vetrotex" as the plaintiff, although Vetrotex functioned as both a wholly-owned subsidiary and parent corporation over the time at issue.

In 1991, the plaintiff again solicited defendant to buy its glass. *Id.* at 149. The plaintiff

flew to California to work out the terms of the new business relationship and soon after the parties

entered into a new supply agreement. *Id.* A year later, in 1992, the plaintiff again flew to

California to negotiate the renewal of the 1991 supply agreement. *Id.* Under the 1992 supply

agreement, the plaintiff agreed to ship its product from its plant in Texas to the defendant's facility

in California. *Id.* The plaintiff's Southern California office sent the invoices to the defendant, and

the plaintiff received payment in California. *Id.*

In late 1993, the plaintiff decided it was no longer going to sell its fiberglass product to the

defendant. *Id.* As a result, the plaintiff terminated the agreement, via telephone, and ceased

making deliveries. *Id.* at 149-50. In response, the defendant withheld payments on outstanding

invoices. *Id.* at 150. In 1994, the plaintiff brought a diversity action against the defendant in the

Eastern District of Pennsylvania to recover the withheld payments. *Id.* Soon thereafter, the the

defendant sued plaintiff in California state court seeking to recover damages from the breach of

the 1992 agreement, and the plaintiff removed the case to federal court. *Id.*

On appeal, the Third Circuit affirmed the district court's dismissal of Vetrotex's complaint

for lack of personal jurisdiction. *Id.* at 153-54. The Third Circuit found that the defendant "was

merely a 'passive buyer' of Vetrotex's product." *Id.* at 152. Therefore, the defendant did not

purposefully avail itself of doing business in Pennsylvania. *Id.* The *Vetrotex* court specifically

noted the following:

> [T]his is not a case where the defendant solicited the contract or
> initiated the business relationship leading up to the contract . . . [n]or
> is this a case where the defendant sent any payments to the plaintiff
> in the forum state . . . or where the defendant engaged in post-sale
> contact with the plaintiff in the forum state.

*Id.* at 152-53 (citations omitted). In affirming, the Circuit made clear that the parties' course of dealing is a relevant factor for personal jurisdiction purposes only if the dealings relate to the disputed contract. *Id.* at 153. Thus, the court in *Vetrotex* found that dealings during the parties' business relationship from 1980-1989 were not relevant to the personal jurisdiction analysis regarding the 1992 agreement because that relationship had terminated in 1989. *Id.*

Comparatively, in *Bachmann Software & Services*, the plaintiff Bachmann, a New Jersey corporation with its principal place of business in New Jersey, brought suit against defendant Intouch Group, Inc., a California Corporation with its principal place of business in California. 2008 WL 2875680, at *1.[6] Glenn Bachmann was plaintiff's primary developer and project liaison, and he was a resident of New Jersey. The facts in large part relied on Mr. Bachmann's direct involvement with the defendant. In December 2006, Mr. Bachmann saw a message post in an internet forum stating that the defendant was seeking software developers to work on its mobile phone software application. *Id.* Mr. Bachmann responded to the message and soon thereafter sent a proposal of his work and a standard development agreement to the defendant. *Id.* Mr. Bachmann then flew to California to meet with the defendant. *Id.*

In March 2007, the parties signed an initial development agreement. *Id.* The agreement stated that California law governed the terms of the contract. *Id.* After some differences of opinion in the ensuing months, Mr. Bachmann made several trips to California to renegotiate the terms of the 2007 agreement. *Id.* at 2. In October 2007, the parties reached a new agreement. Mr. Bachmann received a copy of the signed October 2007 agreement in New Jersey. *Id.* Over the course of their business dealings, Mr. Bachmann traveled to the defendant's California office seven

---

[6] Judge Katharine Hayden of the New Jersey District Court referred defendant's motions to then Magistrate Judge Patty Shwartz for a Report and Recommendation. 2008 WL 2875680, at *1. The matter was then settled on September 10, 2008. Civil Docket Case, No. 08-2025; D.E. 30.

times for project planning and status meetings. *Id.* The parties exchanged over 5,000 emails, with Mr. Bachmann receiving his emails in New Jersey. *Id.*

Pursuant to both the March and October 2007 agreements, the defendant made payments to the plaintiff eleven times. For nine of those payments, the defendant mailed the payment to the plaintiff in New Jersey. *Id.* Mr. Bachmann believed that defendant also owed him an additional $59,000. *Id.* at 3. Therefore, in March 2008, the plaintiff filed a complaint in New Jersey Superior Court alleging contract and tort claims. *Id.* The defendant then removed the matter to federal court. *Id.*

As to the breach of contract claim, Judge Shwartz found that the District of New Jersey had specific jurisdiction over the defendant. *Id.* at 12. Judge Shwartz pointed to multiple contacts that the defendant had with the forum to support her finding. For example, Judge Shwartz noted, the parties had exchanged more than 1,500 emails in connection with the October 2007 agreement alone. *Id.* at 9. The defendant had also sent a copy of the newly executed October 2007 agreement to Mr. Bachmann in New Jersey. Thus, Judge Shwartz found, the defendant should have known that Mr. Bachmann would be performing the work in New Jersey. *Id.* Judge Shwartz added that the defendant had sent payments to the plaintiff in New Jersey. Mr. Bachmann had also participated in telephone conferences with the defendant from New Jersey. Judge Shwartz further observed that even the alleged breach of the contract itself arose from the defendant not sending payments to the plaintiff in New Jersey. *Id.* Judge Shwartz found that the parties' communications reflected that the defendant had entered into negotiations "for an agreement that would have created rights and obligations among the citizens of [New Jersey] . . . [and that the defendant] deliberately and personally directed significant activities towards the state for the purpose of obtaining a customized product." *Id.* (citing *Fiscus v. Combus Fin. AG*, No. CIV.A.03-1328, 2006

WL 1722607, at *7 (D.N.J. June 20, 2006)) (internal quotations omitted). Judge Shwartz, therefore, concluded that the defendant had purposefully availed itself of doing business in New Jersey.

Here, Defendant has sufficient minimum contacts with New Jersey to support specific personal jurisdiction, and Defendant's reliance on *Vetrotex* is misplaced. Unlike *Vetrotex*, Defendant was not a "passive buyer." Defendant freely admits that when it sought to acquire the assets of Slocum, the key consideration in the deal was Slocum's exclusive distribution rights for Plaintiff's products. As a result, Defendant affirmatively sought assurances from Plaintiff that Plaintiff would allow RIDC to continue as the exclusive distributor in Rhode Island. Defendant clearly knew Plaintiff was a New Jersey company and considered the acquiring of Plaintiff's business to be a, if not the, critical factor in deciding whether to purchase Slocum. By comparison, Plaintiff did not seek out Defendant to enter into a business relationship.

Moreover, during the formation of the parties' agreement, Defendant sent both a letter, with RIDC trade references and banking contacts, and a credit application to Plaintiff in New Jersey. Defendant attempts to downplay the significance of these documents by referring to the letter as a "form letter" and the credit application as "standard industry practice." Supp. Mancini Aff. ¶¶ 16-17; D.E. 12-2. However, notwithstanding the label Defendant attempts to assign these documents, both were business documents directly related to Defendant's securing of Plaintiff's business. Defendant also argues that Plaintiff required these documents. *Id.* However, far from supporting Defendant's position, Plaintiff's insistence on receiving these documents only underscores the importance of the information provided therein to the parties' business relationship.

Thereafter, during the parties' course of dealings, Defendant sent numerous purchase orders and bill-back invoices to Plaintiff in New Jersey. Overall, Defendant sent approximately 477 purchase orders to Plaintiff in New Jersey, reflecting approximately $4,900,000 in sales. Defendant also arranged for the pick-up of approximately $2.2 million worth of products from Plaintiff in New Jersey. To pick-up these goods Defendant made, or had carriers make, approximately 212 trips to New Jersey. Thus, and unlike in *Vetrotex*, Defendant had extensive post-agreement contacts with Plaintiff in New Jersey relating to their distributorship agreement.

Although Defendant attempts to characterize its contacts with New Jersey as "random" and "fortuitous," the Court disagrees. Defendant could make such an argument if, for example, one of its emails was routed through Pennsylvania before reaching Plaintiff in New Jersey, and Plaintiff brought suit in Pennsylvania. However, this is not the case. Defendant sent information to New Jersey and picked up goods from New Jersey because that is where Plaintiff and its goods were located. There is nothing random or fortuitous about such contacts.

Finally, as noted, Defendant did not have to physically enter New Jersey (although its carriers certainly did, over 200 times, to pick-up Plaintiff's goods) for the Court to find specific personal jurisdiction. Defendant purposefully availed itself of the privilege of conducting activities in New Jersey.

b. Fair Play and Substantial Justice

Once a plaintiff makes a showing of minimum contacts so that the first factor is met, a defendant bears a "heavy burden" to show an absence of fairness or lack of substantial justice. *Grand Entm't Grp., Ltd.*, 988 F.2d at 483. "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *O'Connor*, 496 F.3d at

324 (quoting *Burger King,* 471 U.S. at 477). A court considers several factors to determine whether exercising jurisdiction would comply with traditional notions of fair play and substantial justice, including "the burden on the defendant, the interests of the forum state, plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining efficient resolution of controversies, and, if relevant, the shared interest of the several states in furthering substantive social policies." *XL Specialty Ins. Co. v. Westmoreland Coal Co.,* No. CIV. 06-1234, 2006 WL 1783962, at *10 (D.N.J. June 26, 2006) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County,* 480 U.S. 102, 113 (1987)).

Here, the Court's exercise of jurisdiction over the Defendant accords with the notions of fair play and substantial justice. Defendant, in a conclusory fashion, states that "litigating here would place an unnecessary burden on RI Distributing." Def. Brf. at 13. Such a conclusory argument in no ways meets Defendant's heavy burden of showing an absence of fairness or lack of substantial justice. Moreover, a review of the supporting documents that Defendant submitted to the Court fails to reveal any factual support for Defendant's claim.

Defendant also indicates that this matter requires interpretation of the Dealership Act, which, according to Defendant, no Rhode Island court has yet do. Def. Brf. at 13-14. Yet, the Court does not find this argument compelling because the case in Rhode Island is now in federal court. Thus, in either jurisdiction, a federal court will be interpreting Rhode Island state law. Defendant has not made any compelling arguments as to why a federal court in Rhode Island is better equipped to undergo this interpretation than a federal court in New Jersey. *See generally Liberty Mut. Ins. Co. v. Treesdale, Inc.,* 419 F.3d 216, 228 (3d Cir. 2005) (recognizing that a federal court sitting in diversity always applies state substantive law); *McKenna v. Ortho Pharm. Corp.,* 622 F.2d 657, 663 (3d Cir. 1980) (finding that a "federal court attempting to forecast state

law must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand").

Therefore, the Court has specific personal jurisdiction over Defendant.

## B. Venue

In federal court, venue is governed by two statutes: 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406. *Kierstein v. Ostlund*, No. CIV. 13-07513, 2014 WL 3731295, at *1 (D.N.J. July 28, 2014). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Section 1406, in contrast, "comes into play where plaintiffs file suit in an improper forum." *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) (history and citation omitted). It provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406.

Here, Defendant argues that the Court should dismiss the Complaint pursuant to Section 1406. Def. Brf. at 14. Plaintiff counters that venue is proper pursuant to 28 U.S.C. § 1391(b)(2). Section 1391(b)(2) provides, in relevant part, that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Plaintiff asserts that the central event giving rise to this lawsuit was its written notice of termination, drafted in New Jersey and, sent to Defendant on Winebow's New Jersey letterhead. Pl. Opp. at 18. Defendant, however, contends that "nearly all of the parties' conduct relating to the distributorship occurred outside New Jersey" and so venue is not proper pursuant to Section 1391(b)(2).

The Court disagrees with both parties. As to Plaintiff's argument, the triggering event may have been the termination letter, but the Court must also review the contractual relationship of the parties, as discussed above. Similarly, as to Defendant's assertion, the course of the parties' entire dealings appears relevant in light of Defendant's claim that the Dealership Act applies. Thus, the same facts that support a finding of specific personal jurisdiction also support a finding of proper venue. Defendant solicited a business relationship with Plaintiff, a New Jersey corporation. Defendant sent Plaintiff business documents in New Jersey, including the initial letter and a credit application, to form a business relationship between the parties. Defendant sent numerous purchase orders and bill-back invoices to Plaintiff in New Jersey. Overall, Defendant sent approximately 477 purchase orders to Plaintiff in New Jersey, reflecting approximately $4,900,000 in sales. Defendant also arranged for the pick-up of approximately $2.2 million worth of products from Plaintiff in New Jersey. Thus, the parties' course of dealings shows that a substantial part of the events giving rise to the underlying claim occurred in the District of New Jersey. The Court denies Defendant's motion to dismiss for improper venue but for reasons different than those espoused by Plaintiff.

## C. Transfer

As stated above, Section 1404(a) provides that a district court may transfer a civil matter to another district for the convenience of the parties and witnesses or in the interest of justice. *Jumara*, 55 F.3d at 879. A defendant bears the burden of establishing that transfer is warranted. *Id.* This is not a light burden because "a plaintiff's choice of venue should not be lightly disturbed." *Id.* (quotation omitted). At outset, the Court notes that Plaintiff does not contest Defendant's submission that Plaintiff could have brought this action in Rhode Island (i.e. that venue would

have been proper there, and that Rhode Island could exercise personal jurisdiction over parties). *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).

In ruling on a motion to transfer, a court considers a variety of factors, but also decides the motion on an "'individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). Section 1404(a) provides three statutory factors for a court to consider: "convenience of parties, convenience of witnesses, or interests of justice." *Id.* The Third Circuit has also found that a court should consider several private and public interests in determining whether transfer is warranted. The private factors include the plaintiff's forum choice, the defendant's preferred forum choice, whether plaintiff's claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial conditions, the convenience of the witnesses to the extent they would not be available in one of the fora, and the location of the books and records to the extent they would not be available in one of the fora. *Id.* The public factors include the enforceability of the judgment; practical considerations that could make a trial easier, less expensive, or more efficient; the relative court congestion of the two fora; the local interest in deciding the controversy at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

Here, Defendant's primary argument is that Plaintiff's choice of forum is entitled to no deference because Plaintiff filed for declaratory relief in anticipation of coercive litigation. Def. Brf. at 16-17. Plaintiff counters that Defendant's argument omits material facts that led it to file in New Jersey. Pl. Opp. at 20. Specifically, Plaintiff claims that it spent four months attempting to get a license for its affiliate, WRI, because the trade association, the Alcoholic Beverage Wholesale Dealers of Rhode Island - of which RIDC is a member - "vigorously opposed" the

license application. Then, after WRI finally received a license, Defendant "surprised" Plaintiff by suddenly "threatening Winebow with liablity under the Dealership Act." *Id.* In its reply, Defendant does little to contest these facts other than saying that it is only one member of the trade association. Def. Rep. at 15.

Generally, a Plaintiff's choice of forum is a "paramount consideration" in deciding a motion to transfer. *Shutte*, 431 F.2d at 25; *Aventis Pharma S.A. v. Sandoz Inc.*, No. CIV.A. 06-3671MLC, 2007 WL 1101228, at *3 (D.N.J. Apr. 10, 2007). Given the licensing process that preceded Plaintiff's decision to terminate its relationship with Defendant, the Court finds that Plaintiff's decision to terminate the parties' business relationship came as no surprise to Defendant. However, even if Plaintiff's claim for declaratory relief should not be given the deference normally accorded to a plaintiff's choice of forum, Defendant carries the burden of proving that transfer is appropriate. In that regard, Defendant makes a perfunctory argument, consisting of less than a page, to support its motion. Def. Brf. at 17.

As to the private factors, and as already noted, the claim at issue here depends on the parties' entire course of dealings, in addition to the critical fact that the parties' agreement was verbal and did not restrict Plaintiff from terminating the agreement. Thus, the events in New Jersey are important. As to the convenience of the parties, New Jersey is obviously the more convenient forum for Plaintiff to litigate in and Defendant fails to allege concrete facts as to why it would be financially difficult to litigate the matter in New Jersey. Similarly, Defendant presents no concrete facts as to why it would be inconvenient for its witnesses to litigate the matter in New Jersey or, more importantly, why certain witnesses would not be available if the matter is litigated in New Jersey.

Further, as to the public factors, Defendant, again, reiterates that its case will turn on a judicial interpretation of the Dealership Act. However, as the Court noted, whether the case is litigated in New Jersey or Rhode Island, a federal court will be charged with interpreting the statute. Finally, New Jersey has a local interest in permitting its corporate residents to litigate their disputes in New Jersey. Defendant has made no arguments concerning the remaining factors, such as enforceability of the judgment, so the Court does not consider them in determining whether Defendant has carried its burden.

The Court finds that Defendant has not carried its burden to show that transfer is warranted. Defendant's motion to transfer is denied.

## III.  CONCLUSION

Therefore, for the reasons discussed above, Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the alternative, to transfer this action pursuant to 28 U.S.C. § 1404(a), is **DENIED**. An appropriate Order accompanies this opinion.

Dated: April 3, 2018

John Michael Vazquez, U.S.D.J.